```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF PUERTO RICO
```

| UNITED STATES OF AMERICA, | |
|---|---|
| **Plaintiff,** | |
| v. | **Criminal No.** 25-240 (FAB) |
| ÁNGEL CARRER-RIVERA (1), *et al.*, | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

BESOSA, Senior District Judge.

Before the Court is the United States (the "government")'s motion *in limine* requesting the Court's permission to delay production of videos recorded during an undercover operation into the fraud conspiracy alleged in this case. (Docket No. 92). Defendants Ángel Carrer-Rivera [1] (Docket No. 95), José Torres-Rosado [7] (Docket No. 94), Víctor García-Soto [3] (Docket No. 99), and Félix Arroyo Rivera [10] (Docket No. 100) responded. The government replied. (Docket No. 107.) For the reasons set forth below, the government's motion *in limine* is **DENIED WITHOUT PREJUDICE.** (Docket No. 92.) The parties shall confer and submit a joint proposed protective order with appropriate disclosure conditions for the Court to review. The government need not produce the video until after the protective order has been entered.

A grand jury returned an indictment on May 21, 2025, charging the defendants with conspiracy to defraud the United States Department of Veterans Affairs.  (Docket No. 3.)  Each defendant is accused of conspiracy to steal government money in violation of 18 U.S.C. §§ 371 and 641 (count one) and conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1349 (count two).  Id. at pp. 5-10.  The indictment also contains forty-seven other counts of mail and wire fraud, which are each applicable to defendants Carrer-Rivera [1] and Rivera-Maitin [2], and variously applicable to the other eight defendants.  Id. at pp. 10-19.

The government used a confidential source and three undercover agents to investigate the case.  (Docket No. 92 at p. 1.)  The source and undercover agents posed as veterans and met with defendants Carrer-Rivera and Rivera-Maitin, the alleged organizers of the conspiracy, and attempted to solicit their services to fraudulently inflate their VA disability ratings.  Id.  The agents recorded videos of these meetings in which the source, the agents, and Rivera-Maitin are visible.  Id.; Docket No. 107 at p. 2.  Because one of the agents is currently engaged in a similar but unrelated undercover operation, the government wishes to withhold the videos from the defendants "until such time as they become relevant for trial."  (Docket No. 92 at p. 1.)  The

Criminal No. 25-240 (FAB)                                                    3

government also claims that redacting the 20 hours of video to protect the identities of the agents would be very time-consuming and burdensome. Id. at p. 1. In the meantime, the government proposes sending defendants audio-only versions of the recordings. Id. at p. 1.

The responding defendants, Torres-Rosado [7], Carrer-Rivera [1], García-Soto [3], and Arroyo-Rivera [10], wish to receive both the audio and video of the recordings. They argue that the government has an obligation to produce the recordings under Federal Rule of Criminal Procedure 16 and under Brady v. Maryland, 373 U.S. 83 (1963). See Docket No. 94 at pp. 2-3; Docket No. 99 at p. 2. Defendants argue that they may bring a defense of entrapment at trial, and that the video could be relevant to show whether the undercover agents induced or intimidated them into breaking the law. See Docket No. 94 at pp. 3-5. They claim the audio-only version would not convey the physicality of the interaction, which may be relevant to their defense. Id. at p. 4.

Because the government intends to use the videos at trial, they have an obligation to produce them to each defendant upon request. See Fed. R. Crim. P. 16(a)(1)(E) ("Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of

Criminal No. 25-240 (FAB) 4

any of these items, if the item is within the government's possession, custody, or control and . . . the government intends to use the item in its case-in-chief at trial"); United States v. Scott, No. 21 Cr. 429 (AT), 2022 U.S. Dist. LEXIS 52625, at * 6-7 (S.D.N.Y. Mar. 23, 2022) ("Under Rule 16, upon a defendant's request, the government must permit the defendant to inspect and to copy video evidence . . .") (internal quotations and alterations omitted). The fact that Rivera-Maitin is the only defendant visible in the video does not change this conclusion because each defendant faces conspiracy charges, and any defense applicable to Rivera-Maitin may also be applicable to each defendant. Nonetheless, under Fed. R. Crim. P. 16(d)(1), the Court may authorize the government's delayed production of the video upon a showing of good cause. "A court's finding of good cause must be based on a particular factual demonstration of particular harm, not on conclusory statements." United States v. Ruiz-Ruiz, Crim. No. 22-232 (RAM), 2025 U.S. Dist. LEXIS 158695, at *15 (D.P.R. Aug. 14, 2025) (Arias, C.J.) (citing United States v. Padilla-Galarza, 990 F.3d 60, 77 (1st Cir. 2021)).

The Court finds that the government has not met its burden of showing good cause. According to the government, the cameras "were worn by the undercovers" and "focus mostly on [2] Rivera-Maitin and the source and the undercovers only appear when they are all

Criminal No. 25-240 (FAB)                                                    5

moving around." (Docket No. 107 at p. 2.) By the sound of it, the faces of the undercover officers do not appear very often, which undercuts the government's contention that the videos would be difficult to redact. In any case, the government could achieve its stated goal of protecting the agents' identities by requesting a protective order limiting the dissemination of the video as appropriate. See United States v. Herr, Crim. No. 16-10038-IT, 2016 U.S. Dist. LEXIS 100966, at *12-17 (D. Mass. Aug. 2, 2016) (ordering the government to produce an unredacted video under a protective order limiting its disclosure to defense counsel in order to protect the identities of undercover agents); United States v. Carmona-Bernacet, Crim. No. 16-547 (FAB), 2023 U.S. Dist. LEXIS 52256, at *12 (D.P.R. Mar. 24, 2023) (Besosa, J.) ("The safety of government witnesses is a proper rationale for a protective order.") (internal quotation marks and citation omitted). Accordingly, the Court finds that the government has not shown good cause to avoid its obligation to produce the video version of the recording.

At this time, there is no need for the Court to address whether the videos may constitute exculpatory evidence under Brady v. Maryland. The Court is confident that the government is aware of their obligation to produce Brady evidence in a timely manner to avoid prejudicing the defense. See United States v. Montoya,

Criminal No. 25-240 (FAB)                                                                 6

844 F.3d 63, 71 (1st Cir. 2016) (no Brady violation unless defendant shows a "reasonable probability that the outcome of his case would have been different had the material been disclosed in a timely manner") (internal citation omitted).

For the reasons set forth above, the government's motion *in limine* is **DENIED WITHOUT PREJUDICE**.  (Docket No. 92.)  The parties shall confer and submit for the Court's review a joint proposed protective order providing appropriate disclosure conditions for the video.  The government need not produce the video until after the protective order has been entered.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 15, 2025.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE